CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 24 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRIAN D. BROWN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:17CV00491 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Brian D. Brown, was born on April 8, 1971. He did not graduate from high school but eventually earned a GED. Mr. Brown has been employed as a warehouse worker, automotive accessory installer, and truck driver. (Tr. 30, 231). He last worked on a regular and sustained basis in 2014. (Tr. 29, 231). On April 7, 2014, Mr. Brown filed applications for disability insurance benefits and supplemental security income benefits. In filing his current

claims, Mr. Brown alleged that he became disabled for all forms of substantial gainful employment on March 31, 2014, due to back problems and arthritis. (Tr. 230). At the time of an administrative hearing on October 25, 2016, plaintiff amended his applications so as to reflect an alleged disability onset date of January 1, 2016. (Tr. 30). Mr. Brown maintains that he has remained disabled to the present time. With respect to his application for disability insurance benefits, the record reveals that Mr. Brown met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Brown's applications were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 6, 2016, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Brown is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[1] The Law Judge found that Mr. Brown suffers from several severe impairments, including dysfunction of the major joints, osteoarthritis and allied disorders, degenerative disc disease, lumbar spondylosis, and lumbar postlaminectomy syndrome, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 13–14). The Law Judge then assessed Mr. Brown's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except the claimant would retain the

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

capacity to lift/carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight hour workday; stand/walk six hours in an eight hour workday; pushing/pulling as much as lift/carry; occasionally use the right foot in operating of foot controls; frequently balance; and occasionally climb ramps and stairs, knee[l], stoop, crouch, and crawl. The claimant would additionally retain the capacity to withstand occasional exposure to unprotected heights, moving mechanical parts, and occasional operation of a motor vehicle.

(Tr. 14). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Brown is unable to perform any of his past relevant work. (Tr. 17). However, the Law Judge found that Mr. Brown retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 18). Accordingly, the Law Judge concluded that Mr. Brown is not disabled, and that he is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Brown has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

3

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The record reveals that Mr. Brown received treatment for back pain from doctors at Coastal Spine & Pain Center in Jacksonville, Florida in 2013 and 2014, prior to his alleged onset date. On March 4, 2013, Mr. Brown received a thirty-day supply of prescription medication for back pain. (Tr. 312). Dr. Kenneth Powell noted that plaintiff's past medical history included a herniated disc, and that he had undergone a lumbar laminectomy at L4-L5 and a lower lumbar fusion. (Tr. 311). Although plaintiff continued to complain of pain at subsequent monthly appointments, examination notes indicate that he was "doing well," that the prescribed medications helped "improve pain and function," and that plaintiff was "stable on current medications." (Tr. 297, 302, 303, 305, 308).

On August 19, 2013, Mr. Brown underwent a lumbar facet nerve block injection at Coastal Spine & Pain Center. X-rays of the lumbosacral spine were obtained prior to the procedure, which revealed "degenerative joint disease with no appreciable subluxations or fractures." (Tr. 295). Although Mr. Brown "tolerated the injections well without any complications or side effects," he complained of increased back pain in October and November 2013. (Tr. 285, 289, 295). Dr. Powell ultimately prescribed a fentanyl patch, which plaintiff found to be "very helpful" in controlling his pain. (Tr. 285). In February of 2014, Dr. Powell noted that plaintiff had "remained compliant with his medications" and reported "excellent pain control." (Tr. 272). Dr. Powell also noted that Mr. Brown would be starting a different job in Virginia the following week, and that he would forward his examination notes to Mr. Brown's new physician. (Tr. 272–73).

On May 14, 2014, Mr. Brown presented to Ability Physical Medicine and Rehabilitation, Inc. in Blacksburg, Virginia, where he was seen by Dr. Richard Wilson. Plaintiff advised Dr. Wilson that he was "currently unemployed [and] considering application for social security

4

disability," but that he also hoped to "possibly get[] back into youth coaching." (Tr. 317). Dr. Wilson noted that plaintiff demonstrated "some pain behaviors" during the appointment but did "not have a full histrionic disability presentation." (Tr. 317). On physical examination, plaintiff complained of leg and back pain, his reflex at the right Achilles was absent, and his straight leg raising test was "generally positive on the right" and "equivocal on the left." (Tr. 317). Dr. Brown noted that the examination was otherwise "pretty normal." (Tr. 317). He prescribed hydrocodone and tizanadine for pain, and recommended an "increase of exercise." (Tr. 318).

On January 4, 2016, Mr. Brown sought treatment from Dr. Anthony Dragovich at Blue Ridge Pain Management Specialists in Salem, Virginia. Plaintiff primarily complained of pain in his lower back and right leg. (Tr. 320). He reported that the pain was aggravated by activity, but that he was "able to perform cooking, cleaning, and personal hygiene" activities. (Tr. 320). An examination of plaintiff's lumbosacral spine revealed decreased range of motion and some tenderness. (Tr. 322). However, the straight leg raising test was negative bilaterally and plaintiff exhibited normal paraspinal muscle strength and increased tone. Likewise, plaintiff displayed normal range of motion in his upper and lower extremities with no edema, tenderness to palpation, or pain on motion. (Tr. 322–23). Although plaintiff's gait was "antalgic," he was able to stand without difficulty. (Tr. 323). Dr. Dragovich diagnosed plaintiff with lumbar degenerative disc disease, lumbar postlaminectomy syndrome, lumbar spondylosis, and sacroiliitis. (Tr. 323). He performed a right sacroiliac joint injection that provided "some pain relief." (Tr. 323). Mr. Brown underwent a second injection on January 22, 2016. (Tr. 325).

Mr. Brown returned to Dr. Dragovich for a follow-up appointment on February 25, 2016. At that time, plaintiff reported that the injections "were not helpful," that he was "still miserable," and that the pain was "greatly affecting his ability to do basic activities." (Tr. 330–31). Dr. Dragovich performed a physical examination that yielded findings consistent with the previous

5

examinations. (Tr. 332). He prescribed hydrocodone-acetaminophen and cyclobenzaprine, and instructed plaintiff to return in one month. (Tr. 332–33).

Subsequent progress notes from March, April, May, and July of 2016 indicate that the addition of hydrocodone-acetaminophine (Norco)[2] proved to be "helpful" and "without side effects." (Tr. 334–45, 338–39, 342–43, 346–47). Although plaintiff continued to exhibit reduced range of motion in his lumbosacral spine, his musculoskeletal examinations were otherwise normal. (Tr. 336, 340, 344, 348). During a follow-up examination on September 16, 2016, plaintiff reported that his prescription for Norco was not working as well as it once did, and he inquired about adding a fentanyl patch. (Tr. 354). Dr. Dragovich "slightly" adjusted plaintiff's existing prescription, but declined to order a fentanyl patch since they were "managing his pain fairly well" with Norco. (Tr. 354).

At the administrative hearing conducted the following month, Mr. Brown testified that he is in pain "24 hours a day," and that the pain "continuously interrupts his sleep" and causes him to require assistance "washing [his] lower extremities." (Tr. 32–33). Mr. Brown further testified that he is only able to cook simple meals approximately twice a week. (Tr. 34–35). Plaintiff estimated that he can stand approximately fifteen or twenty minutes before he needs to sit and stretch, and that he can sit for approximately ten minutes before he needs to readjust himself. (Tr. 36). Plaintiff also testified that he can only walk approximately fifty yards before he needs to stop, and that he is unable to bend over due to severe pain. (Tr. 38). Mr. Brown further testified that he is "bedridden" from pain approximately three days per week and that he is unable to assist with household chores. (Tr. 39–40).

After considering all of the evidence of record, the Law Judge determined that Mr. Brown's physical problems are not so severe as to prevent performance of lighter forms of work

---

[2] Norco is the brand name for the combination prescription drug.

activity. In making this determination, the Law Judge found that Mr. Brown's allegations of disabling physical limitations are not entirely consistent with the medical evidence and other evidence in the record, including plaintiff's own statements to medical care providers. The Law Judge noted that the clinical evaluations discussed above include "relatively benign objective findings" and do not reflect "the types of medical treatment one would expect for a totally disabled individual." (Tr. 17). The Law Judge further emphasized that the treatment plaintiff has received has been conservative in nature and generally successful in controlling his symptoms. (Tr. 15–16).

The Law Judge also assigned significant weight to the opinions of Dr. Jack Hutcheson and Dr. Robert McGuffin, who reviewed the record at the request of the state agency. Both physicians opined that plaintiff is capable of meeting the lifting requirements for light work and that he can sit, stand, and/or walk for approximately six hours in an eight-hour workday. (Tr. 73, 90–91). Both physicians also found that plaintiff has occasional postural limitations and that he should avoid concentrated exposure to hazards. (Tr. 73–74, 91–92). The Law Judge found that the opinions of the state agency physicians were "supported by the medical evidence of record." (Tr. 17).

On appeal to this court, Mr. Brown, through counsel, makes two arguments in support of his motion for summary judgment. First, Mr. Brown argues that the Law Judge failed to conduct a proper function-by-function analysis in assessing his residual functional capacity. In particular, Mr. Brown contends that the Law Judge failed to make sufficient findings regarding his alleged "inability to maintain a static work posture or his need to lie down as needed during the day." Pl.'s Br. 17, Dkt. No. 16.

Upon review of the record and applicable caselaw, the court finds the plaintiff's first argument unpersuasive. Although guidelines from the Social Security Administration instruct

the Law Judge to take a "function-by-function" approach to determining a claimant's residual functional capacity, SSR 96-8p, 1996 SSR LEXIS 5, the United States Court of Appeals for the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). Instead, the Court agreed with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

The court does not find this to be such a case. It is clear from the Law Judge's decision that he considered all of Mr. Brown's claimed limitations, including those described during the administrative hearing and summarized in a post-hearing brief, but found that such limitations were inconsistent with the objective medical findings, the conservative nature of the treatment provided, and the plaintiff's own statements to treating physicians. (Tr. 15–17). Accordingly, the court believes that the Law Judge's treatment of Mr. Brown's claimed limitations is consistent with the protocol established in Mascio and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of Mr. Brown's residual functional capacity.

Second, relying on the Fourth Circuit's decision in Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), plaintiff contends that the Law Judge's assessment of his testimony and subjective allegations is not supported by substantial evidence. Although Mr. Brown testified at the administrative hearing that he experiences totally disabling pain and discomfort, the Law Judge found that the plaintiff's statements regarding the intensity and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. The Law Judge provided specific reasons for his decision to not fully credit the plaintiff's statements

regarding the severity of his symptoms. The Law Judge observed that, contrary to his testimony at the administrative hearing, Mr. Brown reported to Dr. Dragovich that he is capable of cooking, cleaning, and caring for his personal hygiene despite his musculoskeletal impairments. (Tr. 15–16). The Law Judge also noted that Mr. Brown's objective medical findings have been relatively benign, that more recent examination notes reveal no worsening symptoms or musculoskeletal disease progression, and that plaintiff's symptoms of pain and discomfort have been conservatively treated with prescribed medications. (Tr. 15–17). Indeed, plaintiff's most recent treatment notes indicate that Dr. Dragovich declined to order a fentanyl patch because he believed that plaintiff's pain was effectively managed with a combination of hydrocodone and acetaminophen. (Tr. 354).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. Unlike Brown, the Law Judge considered plaintiff's medical history along with his own allegations regarding the symptoms of his physical impairments. The court agrees that plaintiff's allegations of totally disabling symptoms are somewhat inconsistent with the complaints documented in the treatment records, the objective findings on examination, and the relatively conservative treatment measures provided. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Mr. Brown's testimony.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Brown is free of all pain and discomfort. Indeed, the medical record confirms that plaintiff suffers from musculoskeletal impairments that can be expected to result in subjective limitations. However, the medical record simply does not include clinical findings or objective test results that are consistent with totally disabling symptomatology. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as

well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Brown's claims for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 19th day of October, 2018.

_____
Senior United States District Judge